# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

───────────────

Nº 18-cv-4247 (CBA) (RER)

───────────────

JUAN MORALES,

Plaintiff,

VERSUS

UNITED STATES OF AMERICA, *ET AL.*,

Defendants.

───────────────

**Memorandum & Order**

**NOT FOR PUBLICATION**

───────────────

**RAMON E. REYES, JR., U.S.M.J.**:

Before the Court is plaintiff Juan Morales's ("Morales") motion to (1) compel defendants to produce certain documents in unredacted form, (2) strip those documents of their designation as "confidential" under the stipulated protective order so they can be used in a related state court action, and (3) for the Court to conduct an *in camera* review of all documents defendants have withheld on the basis of privilege. (Dkt. No. 34, Sealed). The motion was previously granted to the extent of ordering defendants to produce "a declaration specifying reasons the relevant documents are subject to the law enforcement privilege as well as redacted and unredacted copies of the relevant documents" for *in camera* review. (Minute Entry dated 5/19/2020).

Having now conducted that *in camera* review, and having considered the declarations and the parties' written submissions, Morales motion is granted in part and denied in part.[1]

Defendants designated as confidential and produced in redacted form certain documents they claim are covered by the law enforcement privilege ("LEP"). The redactions are relatively modest, and include (1) email addresses, office addresses, and telephone numbers of the law enforcement officers involved in this case, (2) document identification numbers, and record and program codes on documents contained in various law enforcement databases, (3) information concerning the investigation of individuals unrelated to this case, and (4) substantive information regarding law

───────────────

[1] Familiarity with the parties' claims and defenses, pleadings and motion papers is presumed. (Dkt. Nos. 15, 16, 33-36).

1

enforcement policies and procedures. Along with their papers in opposition to Morales's motion defendants have submitted the declarations of Matthew C. Allen ("Allen Decl."), a Homeland Security Investigations ("HIS") official, and John P. Wagner ("Wagner Decl."), a Customs and Border Protection ("CBP") official, to explain the origin of certain documents and why the redactions are covered by the LEP. In addition, defendants have submitted the declaration of Deborah Crum ("Crum Decl."), a Federal Bureau of Investigation ("FBI") official who explains that but for unrelated documents, the FBI has no documents in its systems that relate to Morales.

The LEP is a qualified privilege that protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witnesses and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation." *In re City of New York*, 607 F.3d 923, 944-95 (2d Cir. 2010) (internal quotation marks, alterations, and ellipsis omitted); *see also Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011). When properly supported, the LEP creates a "pretty strong" presumption against disclosure. *In re City of N.Y.*, 607 F.3d at 945.

A party seeking disclosure of LEP information may rebut the presumption against disclosure by showing (1) the suit is non-frivolous and brought in good faith, (2) the information sought is not available through other discovery or from other sources, and (3) the information sought is important to their case. With respect to the importance of the information sought, the Second Circuit has held that a "compelling need" is required. *In re City of N.Y., 607 F.3d at 945.* (quotations & citations omitted); *White v. City of N.Y.*, No. 09 Civ. 9901(BSJ)(THK), 2010 WL 2899665, at *1 (S.D.N.Y. July 23, 2010) (citations omitted), *adopted by* No. 09 Civ. 9901(BSJ)(THK), Docket No. 26; *see Holmes v. Fischer*, No. 09 Civ. 929S (LGF), 2013 WL 1309157, at *5 (W.D.N.Y. Mar. 28, 2013); *Carbajal v. Vill. of Hempstead*, No. 02 Civ. 4270 (ADS)(ETB), 2003 WL 23138447, at *5 (E.D.N.Y. Dec. 22, 2003). "It is not enough that identification might be of some assistance, and disclosure should not be allowed simply to permit a fishing expedition or to gratify the moving party's curiosity or vengeance." *White*, 2010 WL 2899665, at *3–4.

If the party seeking disclosure satisfies the three factors, the court must balance "[t]he public interest in nondisclosure . . . against the need of a particular litigant for access to the privileged information." *In re City of N.Y.*, 607 F.3d at 945. "In other words, demonstrating a 'compelling need' does not automatically entitle a litigant to privileged information. Rather, disclosure is required only if that compelling need outweighs the public interest in nondisclosure." *Id.; see Roviaro*, 353 U.S. at 60, 77 S.Ct. 623 ("[t]he scope of the privilege is limited by its underlying purpose").

After conducting the *in camera* review of each and every document (redacted and unredacted), and carefully considering the parties' written submissions, along with the Allen, Wagner and Crum declarations, it is clear to me that defendants have established that the LEP applies to the redactions. Allen and Wagner have identified the origins of the specific documents at issue and why they are covered by the LEP, and the

"specific harms" that may ensue should the protections of the LEP be removed.

The Court need not linger on why the specific redactions are entitled to LEP protection, as all redactions are amply supported in the Allen and Wagner declarations and have been found in other cases to be protected from disclosure. *E.g., Dousa v. U.S. Dep't of Homeland Security*, No.: 19cv1255-LAB(KSC), 2019 WL 6311990, *3 (S.D.Ca. Nov. 22, 2019) (LEP supports redaction of email addresses and telephone numbers of law enforcement officials, and case and document codes found in databases); *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F.Supp.3d 380, 388-89 (S.D.N.Y. 2014) (redactions of document and record codes proper under Exception to Freedom of Information Act) (collecting cases).

Morales has, however, overcome the strong presumption against lifting the LEP from some of these documents, at least partially. Morales' lawsuit does not appear to be frivolous and presumably was brought in good faith. Morales has also established that the information sought is unavailable through other discovery and that he has a compelling need for the redacted information.

In his motion papers, beyond describing the redactions and repeatedly demanding that they be removed, Morales did not describe with any specificity why he needs the redacted information. (Dkt. No. 34 at 4 ("the information must be produced unredacted"); *see also* Dkt. No. 36, Sealed (no explanation of why redacted information is needed)). For example, Morales did not explain why he needs to know the telephone numbers and office addresses of the various government employees who authored particular emails or documents, or why the identification numbers and record and program codes on documents contained in the government databases will help him prove his case.[2]

At oral argument, however, Morales revealed for the first time why he needed to know the specific telephone numbers, email addresses, and document identification numbers and record and program codes:

> Here's why it matters, Judge. Here's why it matters: Because the defendant's position in this case and what their argument is going to be is that Customs Officer David Hernandez, solely in connection with wearing his hat as a Customs Officer, only provided minor assistance to the Nassau County Police Department by solely tracking Juan Morales' travel history and then providing the travel history and when he's coming and going to Nassau County. So what they want to argue is that this was only a Customs, a Customs involvement, okay? So it really does matter because if those codes and those numbers and those i.d.'s are FBI, then that is extremely important in establishing that John Dezalik and Hernandez were wearing FBI federal hats and not Customs hats. It really does matter because of this FBI cyber-crime task force, where you

---

[2] The lone exception is that Morales does explain why he needed the email addresses of the two defendants – to establish that they both acted as FBI task force agents, as opposed to CBP or Nassau County police officers, when they investigated and arrested him. Those email addresses, however, have since been produced in unredacted form, at least partially to indicate whether they were sent from and received to FBI email domains. Thus, Morales no longer has a need for this information.

have Dezalik and Hernandez sitting in the headquarters for the FBI, talking about and investigating my client. They want to -- and you can see it in defense counsel's papers. They want to separate themselves as far as they can from everything having to do with the FBI. They have no problem if they acknowledge that this was all Customs, United States Customs. That's why these i.d.'s and these codes all matter, because we need to really break down now, who was -- what was Hernandez doing? What was his role and involvement. We know that John Dezalik was on the task force *but I want to know whether Hernandez was wearing his hat as a Customs Officer or as an FBI Officer.*

(Dkt. No. 39 at 8-9 (emphasis added)).

As discussed above (*supra* note 4), Morales has already been provided with the domains from which the relevant emails were sent and received. He thus no longer needs such information and that aspect of his motion should be denied.

It is unclear, however, whether Morales has been provided with information indicating the origin of the telephone numbers and physical addresses on each of the relevant emails or other documents sent to or from Dezalik and Hernandez, *i.e.*, whether they are FBI telephone numbers and/or addresses. Morales is entitled to such information and defendant must produce it forthwith. Whether by the production of unredacted documents or a declaration with a document-by-document description, defendants must produce such information within fourteen (14) days. The public interest in keeping such information

protected is greatly outweighed by such a minimal disclosure and Morales's need.

The disclosure of document identification numbers and record and program codes, however, is a different matter. Wagner and Allen both indicate that the various document numbers and identification codes contain law enforcement sensitive information on how the various agencies conduct their operations and that revelation of the information would endanger those operations and possibly enable hackers to compromise the various databases. Wagner Decl. at ¶¶ 15-19; Allen Decl. at ¶¶ 8-10, 13-14. Both Wagner and Allen declare under penalty of perjury that none of redacted information indicates that Morales was being investigated by any of the federal agencies involved, including the FBI. Further, Crum declares that aside from his administrative tort claim, the FBI has no documents in its record keeping systems concerning Morales, further confounding his claim that Dezalik and Hernandez were acting as FBI agents when they purportedly investigated and arrested him. (Crum Decl. at ¶9). Thus, at the very least Morales has not established a compelling need for this information, thereby failing to overcome the strong presumption against disclosure.

Finally, Morales's motion to strip the documents of their confidential designation so he can use them in his related state court action is denied. Beyond reflexively arguing that he needs the unredacted documents for use in his related state court case (Dkt. No. 34 at 7), Morales has not shown which documents he needs to use in the state court action or why he needs to use them. The Court is disinclined to eviscerate the parties' negotiated protective order without a more fulsome and specific showing of need.

4

\*   \*   \*

For the foregoing reasons, Morales's motion to compel is granted in part and denied in part.

SO ORDERED.

U dp rq#1#U h|hv/#Mu1#

United States Magistrate Judge

Dated: August 5, 2020
         Brooklyn, NY